PER CURIAM.
Donald H. Warshaw, a former police chief of the City of Miami, appeals from an order of the Board of Trustees of the City of Miami Firefighters’ and Police Officers’ Retirement Trust [Board], which order directs the forfeiture of Warshaw’s city retirement benefits.[1] We affirm.
The forfeiture came about because of Warshaw’s conviction of one count of mail fraud in violation of Title 18, United States Code, § 1341.[2] This federal conviction led *894 to the Board’s application of section 112.3173(3), Florida Statutes (2001), which reads:
“(3) FORFEITURE. — Any public officer or employee who is convicted of a specified offense committed prior to retirement, or whose office or employment is terminated by reason of his or her admitted commission, aid, or abetment of a specified offense, shall forfeit all rights and benefits under any public retirement system of which he or she is a member, except for the return of his or her accumulated contributions as of the date of termination.”
“Specified offense” is defined in section 112.3173(2)(e), Florida Statutes (2001) to include the embezzlement of public funds, or any theft by a public employee or officer from his or her employer.[3]
Pursuant to section 112.3173(5), the Board held a hearing for the purpose of determining whether Warshaw’s pension rights and privileges should be forfeited. The Board concluded that Warshaw had been convicted of a specified offense as provided in section 112.3173, and ordered the forfeiture.
The testimony at the Board hearing revealed the following. Do The Right Thing [DTRT] is a not-for-profit corporation whose mission, as stated in its articles of incorporation, is to assist the city in recognizing and rewarding young adults and children for their contributions to the community. It was financed principally by the city and based its operations at the physical plant of the Miami Police Department, where it utilized those facilities, including conducting meetings at that location. It used the uncompensated services of at least one employee of the police department in its operations. By the terms of DTRT’s articles of incorporation, then police chief Warshaw was designated as its registered agent for service of process (at the same address as the Miami Police Department). As we observed previously the purposes of DTRT are to expand the City of Miami’s municipal practices of recognizing individuals who have made significant contributions to the community, and to form an alliance between the Police Department and area businesses for the benefit of children in high crime, disadvantaged segments of the community. The financing of DTRT has been 80 to 90 percent from the city’s criminal forfeiture proceeds contained in the city’s law enforcement trust fund. Warshaw used the powers of his public office as police chief to arrange through the Miami City Commission for the city funds to be transferred to DTRT bank accounts, preparatory for use by DTRT for the city’s purposes. Warshaw, however, used part of those transferred funds to pay for personal, unauthorized matters over a period of years.
Warshaw argues that he did not embezzle or commit a theft of public funds (thus there was no “specified offense”) as he embezzled or committed a theft only of DTRT funds. He further argues that as DTRT was a private not-for-profit corporation and not a public entity, no provision of section 112.3173 is applicable, and there *895 fore his federal conviction was not of a specified offense, thus his pension cannot be ordered forfeited. As his support for this proposition Warshaw points out that his federal conviction was for mail fraud in violation of 18 U.S.C. § 1341 for defrauding DTRT. In simple parlance, Warshaw argues, no city public funds were embezzled or stolen by him, just DTRT’s private funds.
We reject this thoroughly disingenuous argument. Warshaw, as city police chief, arranged through the city commission for public city funds to be transferred to DTRT, which was mandated to use these city funds to carry out city functions, effectively as an alter ego of the city, and certainly as its agent. The funds never lost their character as public funds. War-shaw simply took two steps in order to have access to the public funds by (1) arranging to have the city funds transferred to DTRT, then (2) arranging for the city funds to be transferred from DTRT to him. Whether the funds remained with the city’s law enforcement trust fund or were transferred to DTRT, the funds always were slotted for public uses.[4]
The Board also found that Warshaw had violated section 112.3173(2)(e)(6), Florida Statutes, which section is set out in footnote 3. We find it unnecessary to discuss or pass on this issue in light of our foregoing conclusions.[5]
Affirmed.
SCHWARTZ, C.J., and FLETCHER, J., concur.

. Because of her interest in the outcome, Karen S. Warshaw has been permitted to intervene.

. “Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both. If the violation affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.”

. It also includes:
"The committing of any felony by a public officer or employee who, willfully and with intent to defraud the public or the public agency for which the public officer or employee acts or in which he or she is employed of the right to receive the faithful performance of his or her duty as a public officer or employee, realizes or obtains, or attempts to realize or obtain, a'profit, gain, or advantage for himself or herself or for some other person through the use or attempted use of the power, rights, privileges, duties, or position of his or her public office or employment position.”
§ 112.3173(2)(e)(6), Fla. Stat. (2001).

. This includes any privately contributed funds as upon contribution they became funds to be used solely for the city's public purposes.

. For discussions of section 112.3173(2)(e)(6), see DeSoto v. Hialeah Police Pension Fund Bd. of Trustees, 870 So.2d 844 (Fla. 3d DCA 2003), and Jacobo v. Board of Trustees of the Miami Police, 788 So.2d 362 (Fla. 3d DCA 2001).